UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MONTANA

| | |
|---|---|
| In re<br><br>**DEAYDRE LEA PULLIAM** and<br>**TIMOTHY JAMES PULLIAM**,<br><br>Debtors. | Case No. **10-60725-7** |
| **DEAYDRE LEA PULLIAM**,<br><br>Plaintiff.<br><br>-vs-<br><br>**NEAL G. JENSEN**, **RICHARD SAMSON**,<br>and **UNITED STATES OF AMERICA**,<br><br>Defendants. | Adv No. **11-00057** |

# MEMORANDUM OF DECISION

At Butte in said District this 27th day of January, 2012.

In this adversary proceeding Defendants United States of America and Richard Samson, Trustee in the above-captioned Chapter 7 case, each have filed motions to dismiss. The Plaintiff/Debtor Deaydre Lea Pulliam ("Deaydre" or "Plaintiff") filed objections. A hearing on both motions was held at Missoula on January 12, 2012. Samson and the United States each appeared represented by counsel. Deaydre appeared pro se. The Court heard argument of the parties, and at the conclusion of the hearing the Court closed the record and took both motions to dismiss under advisement. After review of the record and applicable law, both motions to dismiss will be granted for the reasons set forth below.

1

Samson appeared at the hearing on January 12, 2012, represented by attorney Trent M. Gardner ("Gardner") of Goetz, Gallik & Baldwin, Bozeman, Montana. The United States was represented by Assistant U.S. Attorney Victoria L. Francis ("Francis"). No testimony or exhibit were admitted.

This Court has jurisdiction of this adversary proceeding arising in or related to the above-captioned bankruptcy case under 28 U.S.C. § 1334(b). The Plaintiff's complaint alleges various torts by Samson and Assistant U.S. Trustee Neal G. Jensen ("Jensen"), negligent acts, defamation and breach of fiduciary duties, which are core proceedings concerning the administration of the estate under 28 U.S.C. § 157(b)(2)(A).

The United States substituted itself for Jensen, and moves to dismiss on several provisions of the Federal Tort Claims Act ("FTCA[1]") contending that statutory exceptions at 28 U.S.C.A. §§ 2680(a) and (h) bar Plaintiff's claims against the United States because it has not waived sovereign immunity against claims based on tort or discretionary functions. Samson moves to dismiss under Rule 12(b)(6) (applicable in adversary proceedings under F.R.B.P. 7012(b)) asserting derived quasi-judicial immunity, federal preemption of Deaydre's state law claims, and contending that she has failed to plead any plausible claims. Deaydre asked for more time at the hearing to consult with an attorney who she stated is considering representing her, and she argued that Samson does not have immunity from her claims.

**BACKGROUND FACTS & PROCEDURAL HISTORY**

For purposes of background, the Court takes judicial notice of the following facts and

---

[1] Liability of the United States relating to tort claims is established "in the same manner and to the same extent as a private individual under like circumstances" under 28 U.S.C. § 2674, subject to certain statutory exceptions.

procedural history shown by the docket in this adversary proceeding and Case No. 10-60275 pursuant to Fed. R. Evidence 201(c). The dockets show facts which are capable of accurate and ready determination by resort to sources whose accuracy cannot reasonable be questioned under Rule 201(b). *See, e.g., In re Clinton*, 449 B.R. 79, 82 n.5 (9th Cir. BAP 2011); *O'Rourke v. Seaboard Surety Co. (In re E.R. Fegert, Inc.)*, 887 F.2d 955, 957-58 (9th Cir. 1989) (appellate court may take judicial notice of underlying bankruptcy records).

The Debtors filed a voluntary Chapter 11 petition on April 7, 2010, represented by attorney Benjamin Tiller ("Tiller") of Helena. Tiller moved to withdraw as Debtors' attorney and that motion was granted on July 13, 2010.

On July 16, 2010, after a hearing on the U.S. Trustee's motion to convert on July 15, 2010, the Court converted the case to Chapter 7 based on Debtors' failure to file monthly operating reports and admission that they were unable to propose a confirmable Chapter 11 plan within a reasonable time. Samson was added to the case as Chapter 7 Trustee. He filed an application to employ Katie Ward as real estate broker, which was approved, and otherwise commenced administering the estate. He filed applications to employ James R. Swanson ("Swanson") and Gardners Auction Service ("Gardners") to identify, value and liquidate personal property, machinery and equipment at auction. Both applications were approved.

On September 22, 2010, Samson filed a notice of intent to sell yaks, and filed an asset report. The notice was served on the Debtors and creditors. No objection was filed and the first sale of yaks was approved without a hearing on October 13, 2010. Samson filed notice to sell additional yaks on January 26, 2011. When no objection was filed that sale was approved on February 15, 2011. Samson filed a report of that yak sale on March 16, 2011.

Debtors retained attorney Michael R. Klinkhammer ("Klinkhammer") to represent them, but he withdrew as their attorney on December 15, 2010, after filing amendments to their schedules. Edward A. Murphy ("Murphy") then was substituted as Debtors' attorney. Murphy also subsequently withdrew as to Deaydre.

The U.S. Trustee commenced Adversary Proceeding No. 10-00085 against the Debtors on September 2, 2010, objecting to their discharge. The U.S. Trustee also filed a motion to compel turnover of documents. Deaydre entered into a stipulation in the main case waiving her discharge if she did not prepare and file amended schedules and tax returns. The U.S. Trustee moved for entry of judgment denying Deaydre's discharge for failure to comply with the stipulation, and the Court granted that motion and entered and Order and judgment denying Deaydre's discharge.

On December 30, 2010, Samson filed a motion for turnover of a 1957 Ford Thunderbird and trailer from the Debtors, as well as various other documents and other items of property. Debtors objected but the items were ordered turned over by Order entered February 16, 2011, after a contested hearing.

On February 21, 2011, Samson filed a notice of intent to sell a 1955 Chevrolet Bel-Air. That sale was approved on March 11, 2011, after no objection was filed. Samson filed a report of that sale on April 14, 2011.

On May 3, 2011, Samson filed a motion to sell personal property free and clear of liens by auction. After no objection and request for hearing was filed by the Debtors after notice, the Court entered an Order on May 23, 2011, granting Samson's motion and authorizing the sale by auction.

On May 17, 2011, Samson filed notices of intent to abandon parcels of real property of the estate located in La Mesa, California, Kailua, Kona, Hawaii, Puna in Hawaii, and in Anaconda, Montana. Those notices were served on Debtors' attorney Murphy. After no objection was filed the Court approved those abandonments on June 6, 2011.

Deaydre requested leave to proceed in this case pro se on June 27, 2011. Murphy moved to withdraw as her attorney on June 29, 2011, but because his motion lacked her consent the motion was scheduled for hearing on September 20, 2011.

Samson filed on July 5, 2011, a motion for sale of Debtors' unfinished home located on Hamilton Heights Road in Ravalli County, Montana (the "Hamilton Heights Road property") and personal property, to a "stalking horse bidder," which was set for expedited hearing on July 26, 2011. Debtors, while still represented by Murphy, filed a pro se objection and asked for an injunction. Samson moved to strike Debtors' objection because they were represented by counsel. The motion to strike was set for hearing. Deaydre failed to appear at the hearing. Murphy appeared and stated that he would not sign or affirm Deaydre's allegations. The Court granted Samson's motion to strike, and directed Samson to submit a proposed order. On July 28, 2011, the Court granted the Trustee's motion for sale of the Hamilton Heights Road property pursuant to an asset purchase agreement and bidding procedures which allowed for competing bids. A second hearing on the sale was scheduled for September 9, 2011. Samson sent out notice of the sale to Debtors' attorney and other parties.

Murphy filed Deaydre's signed consent to his withdrawal as her counsel on August 7, 2011, and the Court allowed his withdrawal as her counsel on the same date and directed her to submit her current address and email address. Deaydre filed a motion to enjoin the stalking horse

5

sale and any other property on August 18, 2011, which the Court denied for lack of service on Samson and the other parties.

On August 25, 2011, Samson filed a report that no competing bids were filed by the deadline fixed by the Court, and that therefore no auction of the Hamilton Heights Road property would take place. The second hearing on the sale of the Hamilton Heights Road property was held on September 7, 2011. Deaydre appeared at the hearing, but failed to file an objection prior to the hearing. The Court[2] entered an Order granting the Trustee's motion for sale of the Hamilton Heights Road property to the stalking horse bidder after no competing bids were submitted. Deaydre filed a motion to reconsider, which the Court set for hearing on September 20, 2011.

Deaydre appeared at that hearing, but offered no new evidence which was not available earlier. The Court denied Deaydre's motion for reconsideration because she failed to object by the deadline. The Court noted that she had the opportunity to submit a bid for the Hamilton Heights Road property herself, or to inform others to bid, but that no competing bid was submitted. On January 20, 2012, Samson filed a report of the sale of the Hamilton Heights Road property to the stalking horse bidder for $4,050,000.00, with $75,000 cash paid to the estate.

Samson amended his application to employ Gardners Auction, and filed on August 26, 2011, a notice of intent to sell the 1957 Ford Thunderbird and trailer at auction to the highest bidder. Samson served Deaydre directly at her email address with that notice of sale. The Court set that sale for hearing on October 13, 2011. Deaydre did not appear in opposition to that sale or

---

[2]Hon. John L. Peterson, United States Bankruptcy Judge, presided over the September 7, 2011, hearing.

to employment of Gardners Auction. Samson appeared and reported that the sale of the Thunderbird and trailer took place in September 2011. The Court overruled Deaydre's objection to employment of Gardners Auction and approved the sale of the Thunderbird and trailer.

Deaydre filed a request for an accounting from Samson and extension of time to prepare on December 8, 2011. That matter was heard on January 12, 2012, after which the Court denied her request and informed her that she could access Samson's notices and reports through PACER.

Deaydre commenced this adversary proceeding on September 2, 2011, when she filed her complaint. She filed an amended complaint on September 30, 2011, along with a petition for reparative injunction[3]. The amended complaint (Docket No. 2) alleges several intentional and negligent torts by Jensen and Samson, defamation, perjury, and breach of fiduciary duties in administering estate property.

The United States moved to substitute itself for Jensen, which was granted, and to dismiss based on sovereign immunity. Samson filed a motion to dismiss. A hearing was held on November 10, 2011. Deaydre appeared and requested more time to obtain counsel. The Court granted her request and gave Deaydre through November 30, 2011, to identify her new counsel and for counsel to file a notice of appearance, and to file amended pleadings by December 16, 2011. The Court admonished Deaydre that it is critical for her to obtain counsel, and reset the motions to dismiss for hearing on January 12, 2012.

On November 30, 2011, Deaydre filed a report submitting the name Gary R. Appel

---

[3]Plaintiff's petition for reparative injunction was denied after a hearing on October 13, 2011, for lack of prosecution after Deaydre failed to appear at the hearing. Dkt. 17.

("Appel") of Appel & Lucas, P.C., stating: "It is my hope and belief that Mr. Appel will be the attorney who will assist me . . . ." However, Appel has never filed a notice of appearance. At the hearing on January 12, 2012, Deaydre appeared pro se and stated that she was trying to satisfy Appel's request for documentation. Appel did not appear.

## DISCUSSION

Deaydre remains pro se, and has not obtained new counsel of record despite extensions and admonitions from the Court. Courts have a duty to construe pro se pleadings and papers liberally, including pro se motions as well as complaints. *Bernhardt v. Los Angeles County*, 339 F.3d 920, 925 (9th Cir. 2003); *In re Kashani*, 190 B.R. 875, 883 (9th Cir. BAP 1995). With that admonition the Court turns to the motions to dismiss.

**I. United States' motion to dismiss**.

The United States' motion to dismiss is based on the Federal Tort Claims Act ("FTCA"), which provides the exclusive avenue to assert a claim sounding in tort against the United States. *In re Franklin Savings Corp.*, 385 F.3d 1279, 1286 (10th Cir. 2004). Footnote 1 of *Franklin* succinctly explains:

> The United States may not be sued absent a waiver of its sovereign immunity. *United States v. Mitchell*, 445 U.S. 535, 538, 100 S.Ct. 1349, 63 L.Ed.2d 607 (1980). The FTCA waives sovereign immunity for actions against the United States resulting from injuries caused by the negligent acts of government employees while acting in the scope of their employment. 28 U.S.C. § 1346(b)(1). The United States can be held liable "in the same manner and to the same extent as a private individual under like circumstances." *Id.* § 2674. Excluded from the FTCA's waiver of immunity, however, are claims "based upon the exercise or performance or the failure to perform a discretionary function or duty" by a federal agency or a federal employee. *Id.* § 2680(a).

*Franklin*, 385 F.3d at 1284 n. 3.

Waivers of sovereign immunity are construed narrowly, must be unequivocally expressed and may not be implied.  *Franklin*, 385 F.3d at 1289-90 (citing cases).

Similarly, the Ninth Circuit has held that, with respect to allegations of negligence by the United States trustee in general duties of selecting, monitoring, and investigating an examiner appointed in a case, as "a matter of law, these are quintessentially acts of discretion within the meaning of the FTCA discretionary function exception."  *Balser v. Dept. of Justice, Office U.S. Trustee*, 327 F.3d 903, 908-09 (9th Cir. 2003) (citing cases).

Deaydre's amended complaint alleges torts and breach of fiduciary duty by Jensen.  Jensen, as representative of the U.S. Trustee, is charged with the duty to supervise the panel of trustees and administration of bankruptcy cases.  *Balser*, 327 F.3d at 909-10.  The Ninth Circuit wrote in *Balser*: "In light of the fact that United States trustees assume the judicial functions historically vested in bankruptcy and district courts, the actions of the United States trustees logically must be cloaked in the same immunity."  327 F.3d at 910.  In the instant case, because the contentions of Deaydre's amended complaint must be construed to be based on Jensen's actions in selecting, monitoring and supervising Samson in the performance of his trustee duties, the Ninth Circuit decision in *Balser* requires that this Court grant the United States' motion to dismiss the complaint against Jensen based upon the FTCA discretionary function exception to the FTCA's waiver of sovereign immunity.  *Balser*, 327 F.3d at 908-09.

## II.  Samson's motion to dismiss

Samson's motion to dismiss is based upon FED. R. CIV. P. 12(b)(6) for failure to state a claim, failure to plead plausible claims, federal preemption of Deaydre's state law claims for conduct that occurred during bankruptcy, and the doctrine of derived quasi-judicial immunity.

9

Deaydre contends that Samson is not immune for breaches of his fiduciary duty or torts.

Under 11 U.S.C. § 704, Samson as Trustee is held accountable for the estate, investigates the Debtors' financial affairs, and furnishes information concerning the estate and its administration to parties-in-interest. § 704(2), (4), and (7); *In re Cedar Funding, Inc.*, 419 B.R. 807, 817 (9th Cir. BAP 2009). "Bankruptcy trustees are entitled to broad immunity from suit when acting within the scope of their authority and pursuant to court order." *In re Harris*, 590 F.3d 730, 742 (9th Cir. 2009), quoting *Bennett v. Williams*, 892 F.2d 822, 823 (9th Cir. 1989); *Kashani*, 190 B.R. at 883. This Court repeats the BAP's analysis of the trustee's derivative judicial immunity from *Kashani*:

> It has long been established that a bankruptcy trustee is an officer of the appointing court. As an officer of the court, the trustee is entitled to a form of derivative judicial immunity from liability for actions carried out within the scope of the trustee's official duties. *Bennett v. Williams*, 892 F.2d 822, 823 (9th Cir.1989); *Mullis v. United States Bankruptcy Court for Dist. of Nev.*, 828 F.2d 1385, 1390–91 (9th Cir.1987), *cert. denied*, 486 U.S. 1040, 108 S.Ct. 2031, 100 L.Ed.2d 616 (1988); *Jacksen*, 105 B.R. at 544. A trustee is entitled to such immunity only if the trustee is acting within the scope of authority conferred upon the trustee by the appropriate statute(s) or the court. *Jacksen*, 105 B.R. at 545 (*citing, Central Transport, Inc. v. Roberto ( In re Tucker Freight Lines, Inc.*), 62 B.R. 213, 217 (W.D.Mich.1986)). While a trustee is allowed to make reasonable mistakes where discretion is allowed, a trustee may be sued for intentional or negligent actions which amount to violations of the duties imposed upon the trustee by law. *Bennett*, 892 F.2d at 823; *Hall v. Perry ( In re Cochise College Park, Inc.)*, 703 F.2d 1339, 1357 (9th Cir.1983). The trustee has a duty to preserve assets of the estate while exercising the care and diligence of an ordinarily prudent person under similar circumstances. *Bennett*, 892 F.2d at 823 (*citing, United States, ex rel. Block v. Aldrich ( In re Rigden)*, 795 F.2d 727, 730 (9th Cir.1986)).
>
> Although there appears to be a conflict between the concept of judicial immunity and the ability to sue the trustee, the courts have established certain standards and instructions whereby the trustees can protect themselves by complying with these standards and, thus, gain judicial immunity. Those instructions include: the trustee should give notice to the debtor and obtain prior

> court approval of the proposed act; the disclosure by the trustee to the court in furtherance of the requested approval must be candid; and the act must be within the trustee's official duties. *Bennett*, 892 F.2d at 823 (*citing Mosser v. Darrow*, 341 U.S. 267, 274, 71 S.Ct. 680, 683, 95 L.Ed. 927 (1951); *Mullis*, 828 F.2d at 1390–91; *Cochise*, 703 F.2d at 1357 n. 25).

*Kashani*, 190 B.R. at 883-84.

In *Cedar Funding*, the BAP discussed a two part test for determining whether a trustee is entitled to quasi-judicial immunity, noting that the trustee bears the burden of establishing that such immunity is justified. 419 B.R. at 822, citing *In re Castillo*, 297 F.3d 940, 947 (9th Cir. 2002). The court first enquires into the immunity historically accorded the relevant individual, and in the Ninth Circuit bankruptcy trustees historically have been afforded absolute quasi-judicial immunity because they perform functions that are judicial in nature, so the Trustee may assert a quasi judicial immunity defense. *Cedar Funding*, 419 B.R. at 822; *Castillo*, 297 F.3d at 950 (citing cases).

Second, the court decides on a case-by-case basis whether immunity covers the trustee's functions at issue, and the rule is that a trustee may be immune for functions that involve discretionary judgment. *Id.*, citing *Castillo*, 297 F.3d at 947 (citing *Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429, 436, 113 S.Ct. 2167, 124 L.Ed.2d 391 (1993)). In determining whether a particular function is judicial in nature involving discretionary judgment, courts must use caution not to construe the immunity doctrine too narrowly by focusing on the underlying act, but instead the court should determine whether a particular function is judicial in nature. *Cedar Funding*, 419 B.R. at 822, citing *Castillo*, 297 F.3d at 952. Thus in *Cedar Funding* the BAP wrote: "[W]e do not fucus on Nilsen's legal conclusions that the trustee committed libel and slander. This function begs the underlying question of immunity by misplacing the emphasis." 419 B.R.

at 822.

Above, the Court has set forth at length from the case docket Samson's various notices of sale and abandonment filed in Case No. 10-60725 and this adversary proceeding, the hearings held on sales, service on the parties and opportunity to respond and appear, Deaydre's repeated failure to appear or respond in accordance with the rules, her failure to obtain counsel despite extensions granted by the Court, and Samson's numerous reports of sale and other dispositions of property. The procedure followed by Samson in obtaining approval of this Court, after notice and hearing, of sales of real and personal property and abandonment, are similar to the procedure followed by the trustee in *Balser*, 327 F.3d at 910-11, where sales of properties by the United States trustee were heard and approved by the bankruptcy court. The debtors presented objections to some of the sales, and the Ninth Circuit found that the bankruptcy court's process in approving the sales protected the debtors' constitutional rights under the Fifth Amendment not to be deprived of property without due process of law. *Id.* at 910-11.

The Ninth Circuit wrote that for derived quasi judicial immunity to apply, defendant must satisfy the following four elements: (1) their acts were within the scope of their authority; (2) the debtor had notice of their proposed acts; (3) they candidly disclosed their proposed acts to the bankruptcy court; and (4) the bankruptcy court approved their acts. *Harris*, 590 F.3d at 742; *Bennett*, 892 F.2d at 823, 825. In *Harris* the trustee disclosed the sales, which were in the scope of his authority, filed notice of the sales, disclosed their acts to the bankruptcy court, and the bankruptcy court approved their acts after a hearing. 590 F.3d at 743.

Samson satisfied the same four *Harris* elements with respect to each of his sales. He filed notices of sales and abandonment, filed motions for approval of sales of real and personal

property. Deaydre had notice and the opportunity to file objections. When objections were filed the motions were set for hearing. Samson appeared at the hearings and the sales were discussed. Deaydre failed to appear at some hearings, and appeared at others but did not offer any evidence in opposition or submit competing bids. The Court approved the abandonments without objection, and approved sales after holding hearings. Deaydre has failed to appeal the Court's Orders approving the sales. Deaydre was afforded due process and her rights were protected. This Court's approval of the sales addressed and satisfied Deaydre's constitutional rights in the bankruptcy proceedings. *Balser*, 327 F.3d at 910. Thus, Samson is entitled to derived quasi-judicial immunity. *Harris*, 590 F.3d at 743, 744

In sum, the Court finds and concludes that Deaydre's claims against Jensen/the United States are barred by sovereign immunity and the exceptions to the FTCA, and that her claims against Samson are barred by derived quasi-judicial immunity. A separate order will be filed consistent with the following:

**IT IS ORDERED** the motion to dismiss filed by the United States is granted; the motion to dismiss filed by the Trustee Richard J. Samson is granted; and this adversary proceeding is dismissed.

BY THE COURT

*/s/ Ralph B. Kirscher*
HON. RALPH B. KIRSCHER
U.S. Bankruptcy Judge
United States Bankruptcy Court
District of Montana